IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARK KUCHMAS, | * | |
| Plaintiff, | * | |
| | | Civil Action No.: RDB 06-3281 |
| v. | * | |
| TOWSON UNIVERSITY, *et. al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED MEMORANDUM OPINION

This action arises out of a five-count Complaint filed by Plaintiff Mark Kuchmas against Defendants Towson University, Collegiate Housing Foundation, Capstone Development Corporation, Capstone Properties Corporation, Capstone On-Campus Management, LLC, Krapfcandoit Company, Can-Do Construction Company, Inc., and PGAL Architects, Inc.  The Plaintiff alleges that the Defendants violated Titles II and III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), and the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq*. ("FHA").  Pending before this Court are Motions to Dismiss filed by Defendants PGAL Architects, Inc. and Towson University.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, PGAL Architects, Inc.'s Motion to Dismiss is GRANTED, and Towson University's Partial Motion to Dismiss Counts I and II is GRANTED.

## BACKGROUND & PROCEDURAL HISTORY

In 1999, the University System of Maryland entered into a lease on behalf of Towson University ("Towson" or "the University") with Collegiate Housing Foundation ("the

Foundation"). (Compl. ¶ 25.) The lease agreement provided that the Foundation would rent a piece of land on Towson's campus for a term of forty years in order to construct and maintain a private housing facility, known as Millennium Hall. (*Id.*) The Foundation received state bond funding through the Maryland Economic Development Corporation, a state agency, to be able to construct Millennium Hall. (*Id.* ¶ 27.) Capstone Development Corporation was hired to design and construct Millennium Hall in cooperation with the University and the Foundation. (*Id.* ¶ 28.) Capstone Development hired Krapfcandoit Co. and Can-Do Construction Co. to serve as general contractors and PGAL Architects, Inc. to provide architectural services. Millennium Hall was completed and first occupied in 2000[1] and contains 108 two- and four- bedroom rental units. (*Id.*) Capstone Properties Corporation ("Capstone Properties") and Capstone On-Campus Management, LLC manage the facility. (*Id.* ¶¶ 7-8.)

Mark Kuchmas ("Kuchmas" or "Plaintiff") is a twenty-eight-year-old male who uses a wheelchair as a result of a degenerative neuromuscular condition known as Friedreich's Ataxia. (*Id.* ¶ 3.) Kuchmas applied for and was accepted at Towson University for the Spring semester in 2006. (*Id.* ¶ 31.) The Towson Housing Office informed him that there were no handicap accessible rooms available for the semester and referred him to Millennium Hall. (*Id.* ¶ 33.) The Manager of Millennium Hall, Frank Axell, told Kuchmas that there was one accessible male unit available for the Spring semester but that he would have to wait until the apartment was vacated before he could view it. (*Id.* ¶ 34.) Kuchmas relied on this information and signed a lease to reserve the apartment on December 1, 2005. (*Id.*)

Kuchmas toured the unit the first day possible, January 18, 2006, and found that portions

---

[1] Although the exact date of completion is unclear, it is undisputed that Millennium Hall was both completed and first occupied in 2000. (*See* Compl. ¶ 2; PGAL's Mem. Supp. Mot. Dismiss 2; Pl.'s Opp'n Mot. Dismiss 2.)

2

of the apartment were not accessible. (*Id*. ¶¶ 36-37.) In particular, "portions of the apartment, specifically the bathroom and shower area were not sufficiently configured to permit him to turn his wheelchair properly or to permit him to effectively use the shower." (*Id*. ¶ 37.) In addition, the configuration of the desk area, the height of the shower seat, and the difficulty opening doors raised accessibility concerns for Kuchmas. (*Id*. ¶ 38.) He contacted the maintenance supervisor at Millennium Hall, the Office of Disability Services at the University, and Capstone Properties but did not receive any assistance or accommodation. (*Id*. ¶ 38-40.)

Kuchmas filed the subject five-count Complaint in this Court on December 6, 2006, against Towson University, Collegiate Housing Foundation, Capstone Development Corporation, Capstone Properties Corporation, Capstone On-Campus Management, LLC, Krapfcandoit Company, Can-Do Construction Company, and PGAL Architects, Inc. Plaintiff asserts five claims against the Defendants.[2] Count I alleges that the Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. §100.200, *et seq*., by failing to "design and construct Millennium Hall so that all covered units contain all required features of accessible design." (Compl. ¶ 46.) In Count II, Plaintiff alleges that the Defendants' "failure to make reasonable accommodations to afford Plaintiff an equal opportunity to use and enjoy Millennium Hall as other Towson students" violated the FHA, 42 U.S.C. § 3604(f)(3)(B). (*Id*. ¶ 48.) In Count III, Plaintiff asserts that all of the Defendants, except Towson University, failed "to design and construct the public accommodations at Millennium Hall in a manner readily accessible to and usable by individuals with disabilities" in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12183 and 28 C.F.R. § 36.401.

---

[2] Counts I and II are brought against all named Defendants. Count III is asserted against all Defendants except Towson University, while Counts IV and V are asserted solely against the University.

(*Id*. ¶ 50.)  Count IV claims that Towson University's failure to provide adequate accessible housing to disabled students in general and specifically to accommodate his needs violates Title II of the ADA and the ADA's Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A.  (*Id*. ¶¶ 52-54.)  Finally, Count V alleges that Towson University failed to provide accessible housing in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  (*Id*. ¶ 57.)

On March 5, 2007, Defendant PGAL filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Paper No. 30) alleging that (1) the FHA "design and construct" claim in Count I is time-barred, (2) PGAL is not an owner or operator for purposes of the "reasonable accommodations" claim in Count II, and (3) Title III of the ADA does not apply to architects.  On March 28, 2007, Defendant Towson University filed a Partial Motion to Dismiss (Paper No. 34) as to Counts I and II on the grounds that it has immunity under the Eleventh Amendment of the United States Constitution.

STANDARD OF REVIEW

Defendants seek to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]  In reviewing the Complaint, the Court accepts all well-pleaded allegations of the Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff.  *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Rule 8(a)(2) of the Federal Rules of

---

[3] With respect to a defendant's assertion of a statute of limitations defense, a motion to dismiss is analyzed under Rule 12(b)(6).  *See Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 252 (4th Cir. 2001); *Moseke v. Miller & Smith, Inc*., 202 F. Supp. 2d 492, 501 (E.D. Va. 2002); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1277 (2007).

Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). The Supreme Court recently noted that a complaint need not assert "detailed factual allegations" but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). The Court further held that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

## DISCUSSION

**I.     PGAL's Motion to Dismiss**

Defendant PGAL Architects, Inc. ("PGAL") seeks to dismiss all the claims against it set forth in Counts I, II, and III. First, PGAL moves to dismiss Count I, contending that Kuchmas did not file his Complaint within the applicable statute of limitations. (PGAL's Mot. Dismiss 3-6.) Second, it moves to dismiss Count II, arguing that "PGAL is not the owner, operator or manager of Millennium Hall . . . [and] has no right or entitlement to make any accommodations for Plaintiff." (*Id*. at 6.) Finally, PGAL seeks to dismiss Count III because Title III of the Americans with Disabilities Act does not apply to architects. (*Id*. at 7-9.) Each argument will be addressed separately.

**A.     Count I: Fair Housing Act (Design & Construction)**

First, PGAL seeks to dismiss Count I of the Complaint on the ground that the claim is barred by the Fair Housing Act's ("FHA") two-year statute of limitations. *See* 42 U.S.C. §

3613(a)(1)(A) (2006) ("An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice. . . ."). Count I alleges that the Defendants violated the FHA's prohibition against discrimination by failing to "design and construct" residential housing accessible to people with disabilities. *See id.* § 3604(f)(3)(C). In order to determine whether Kuchmas's FHA "design and construct" claim was timely filed, this Court must first determine when the statute of limitations began running, *i.e.*, what was the "alleged discriminatory housing practice" and when did it occur or terminate.

In its Motion to Dismiss, PGAL contends that the statute of limitations began running when Millennium Hall was completed or first occupied, at the latest. (PGAL's Mot. Dismiss 3.) The architecture firm essentially argues that the "alleged discriminatory housing practice" was its "failure to design" a building with handicap accessible units, the specific violation alleged in Count I. *See id*. § 3604(f)(3)(C). According to the Complaint, the building was completed and first occupied sometime in 2000, and PGAL's architecture services were performed even before the construction phase. (Compl. ¶ 2, 10.) Thus, PGAL argues, Kuchmas's December 6, 2006 Complaint was filed more than two years after the statute of limitations began running.

In response, Kuchmas advances two arguments why his claim was timely filed.[4] First, he argues that the statute of limitations began running when "he rented his apartment" in December

---

[4] Kuchmas also argues that the discovery rule should apply. (Pl.'s Mem. Opp'n PGAL's Mot. Dismiss 24-25.) This doctrine states that a cause of action does not accrue until "the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). In this case, the Plaintiff contends that he could not discover the building's defects until he first entered the apartment, several years after construction ended. (Pl.'s Mem. Opp'n PGAL's Mot. Dismiss 24.) However, as the Plaintiff concedes, federal courts have not generally applied the discovery rule to FHA cases. (*Id*.) In addition, if the discovery rule were applied, a company could be liable indefinitely under the FHA for its building's design or construction.

of 2005. (Pl.'s Mem. Opp'n PGAL's Mot. Dismiss 16.) He compares this case to "an ordinary tort case in which the defendant's negligence may predate the plaintiff's injury by, sometimes, years." (*Id*. at 19) He notes that in such tort cases "no cause of action has accrued until the plaintiff suffers injury, even though the defendant has taken no further action." (*Id*.) Like a tort case, Kuchmas argues, he suffered an "injury" when he was unable to use the apartment he rented, which was the "alleged discriminatory housing practice" that triggered the running of the statute of limitations. (*Id*. at 18.) Thus, under his first argument, the December 6, 2006 filing of this lawsuit was well within the two-year statute of limitations. (*Id*.)

In the alternative, Kuchmas advocates applying the "continuing violation doctrine" because "Millennium Hall remains in violation of the FHA to this day and since the discriminatory housing practice has not yet terminated, limitations cannot possibly have expired." (*Id*. at 19.) This Court has previously addressed the continuing violation doctrine and held that "the limitations period does not begin to run until the happening of the 'last asserted occurrence' of discrimination." *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc*., 40 F. Supp. 2d 700, 710 (D. Md. 1999) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982)). However, as noted below, the defendants in that case were managers and owners of the building. Kuchmas alleges that the flawed design of Millennium Hall gave rise to a continued violation of the FHA that will not "terminate" until the units are remodeled and made accessible. (Pl.'s Mem. Opp'n PGAL's Mot. Dismiss 21.) Thus, he argues, his inability to use the apartment he leased was the "last asserted occurrence of discrimination."

Plaintiff alleges violations of the Fair Housing Act's design and construction requirements and reasonable accommodation requirements against all of the Defendants, including PGAL Architects, Inc. The precise issue presented by PGAL's Motion to Dismiss the

FHA claims is the applicability of the statute of limitations set forth in the FHA to claims brought against an architect involved in the design of a noncompliant building. This precise question has been specifically addressed in *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492 (E.D. Va. 2002). In that case, a claim was brought against developers, architectural firms, and condominium associations.[5] In *Moseke*, the U.S. District Court for the Eastern District of Virginia held that "the existence of a FHA non-compliant building is not a continuing violation of the FHA" and that, therefore, claims brought against developers, architectural firms, and community associations more than two years after the completion of the building's construction was time-barred. *Id.* at 510. The court reasoned that the focus of the analysis "must remain on Defendants' acts (*i.e.*, the design and construction of non-compliant buildings), rather than the continuing effects (*i.e.*, the continuing inaccessible features) that those acts caused." *Id*. at 506. The court distinguished "design and construct" cases from situations involving actual discrimination, noting "unlike 'patterns' of . . . discrimination requiring wrongful intent, the construction of a FHA non-compliant building may result from neglect or oversight." *Id*. at 504 n.14. The court also emphasized that the U.S. Court of Appeals for the Fourth Circuit has rejected the continuing violation doctrine in other contexts "where an effect is continuing, but the defendant's act is not." *Id.* (citing *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158 (4th Cir. 1991), and *Jersey Heights Neighborhood Assoc. v. Glendening*, 174 F.3d 180 (4th Cir. 1999)).

In declining to apply the continuing violation doctrine, the *Moseke* court distinguished the previous opinion of this Court in *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40

---

[5] In the *Moseke* case, there were eleven named defendants, seven of which were either developers or architectural firms and four of which were condominium associations. *Moseke*, 202 F. Supp. 2d at 495.

F. Supp. 2d 700 (D. Md. 1999), in which this Court applied the continuing violation doctrine to hold that the FHA's statute of limitations began running on a claim for "the sale of alleged inaccessible new construction" on the date of "the sale of the last inaccessible unit. . . ."  This Court's earlier opinion in *Baltimore Neighborhoods, Inc*. is factually distinct from this case, as the defendants were not architects, but rather owners and managers of the noncompliant building.  *See id.* at 703.

This Court is persuaded by *Moseke*.[6]  Section 3604(f)(3)(C) of the FHA expressly applies to one form of discrimination— the "failure to design and construct" housing such that handicapped individuals have access.  The statute of limitations provision would essentially be meaningless if the continuing violation doctrine were applied to claims asserted under that section, because a company designing or constructing a non-compliant building could be subject to liability indefinitely.  *See Moseke*, 202 F. Supp. 2d at 508 ("If the mere existence of a FHA non-compliant building is a continuing violation under the FHA then there is no limitations period on a disability discrimination claim involving design and construction.").  In addition, other sections of the FHA offer remedies to an aggrieved person if his attempt to rent or buy a

---

[6] Other courts have similarly declined to apply the continuing violation doctrine to "design and construct" cases or have held that the statute of limitations begins running when a noncompliant building is fully constructed.  *See, e.g., Fagundes v. Charter Builders, Inc*., Case No. C-07-1111-JF, 2007 U.S. Dist. LEXIS 56044, at *14 (N.D. Cal. Jul. 20, 2007) (holding that "the continuing harm doctrine does not apply in the construction context); *Thompson v. Mt. Peak Assocs*., LLC, Case No. 05-CV-145-BES, 2006 U.S. Dist. LEXIS 36981, at *8 (D. Nev. June 5, 2006) (holding that "the last discriminatory act in this case occurred in the year 2000 when the construction of Sunrise Bay was completed"); *United States v. Taigen & Sons, Inc*., 303 F. Supp. 2d 1129, 1141 (D. Idaho 2003) ("[T]he alleged 'failure to design and construct' in compliance with the Fair Housing Act has a continuing effect rather than constituting a continuing violation of the Act."); *United States v. Pac. Nw. Elec., Inc*., Case No. CV-01-019-S-BLW, 2003 U.S. Dist. LEXIS 7990, at *13 (D. Idaho Mar. 19, 2003) (finding that the "failure to design and construct" accessible housing under section 3604(f)(3) "occurs and is complete at the time the particular dwellings are designed and/or constructed").

noncompliant dwelling occurs more than two years after the construction of the building. *See, e.g.*, 42 U.S.C. §§ 3604(f)(3)(A)-(B) (2006).

Because the statute of limitations in this case began running, at the latest, in 2000 when Millennium Hall was constructed, Kuchmas did not file his FHA "design and construct" claim within the two-year statute of limitations period. Accordingly, this Court finds that the Plaintiff has failed to state a claim against PGAL and the architecture firm's Motion to Dismiss is GRANTED with respect to Count I.

### B. Count II: Fair Housing Act (Reasonable Accommodations)

Defendant PGAL next argues that Plaintiff has failed to state a claim against it for failing to make reasonable accommodations under the FHA. (PGAL's Mem. Supp. Mot. Dismiss 6.) Specifically, PGAL argues that it "is not the owner, operator or manager of Millennium Hall" and therefore "has no right or entitlement to make any accommodations for Plaintiff." (*Id.*) The "reasonable accommodations" provision in the FHA states that it is unlawful to "refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B) (2006). The statute is silent as to who can be liable under this section.

Unlike in Count I, PGAL does not challenge the applicability of the statute of limitations to the failure to accommodate claim in Count II. In a typical failure to accommodate case, the two-year statute of limitations period would begin running when a plaintiff's request for a reasonable accommodation is refused. However, as discussed *supra*, PGAL's involvement in this case ended when the construction of Millennium Hall was completed. Nowhere in the Complaint does Kuchmas claim that he contacted PGAL seeking a reasonable accommodation or

that the architect was ever made aware of the non-accessibility issue in early 2006.

Kuchmas contends that this case is analogous to *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc*., 3 F. Supp. 2d 661, 664 (D. Md. 1998), in which this Court held that a construction company could be liable under the "design and construct" portion of the FHA because "Congress intended the FHAA to impose liability on more than just the developer or owner in light of the broad language in the statute--'in connection with the design and construction . . .'--and the fact that there is no express limitation on possible defendants in the statute like there is in the Americans With Disabilities Act. . . ."[7]  However, this Court's earlier opinions in both *Baltimore Neighborhoods* cases involved an action against the contractors and owners of condominiums.  With respect to an allegation of failing to make reasonable accommodations under the FHA, the continuing duties of an owner are clearly distinguishable from the initial design of a building on the part of an architect.

Accordingly, this Court finds that PGAL cannot be liable under the failure to accommodate provision of the FHA, and PGAL's Motion to Dismiss is GRANTED with respect to Count II.

C.      **Count III: Title III of the Americans with Disabilities Act**

Finally, Defendant PGAL seeks to dismiss Count III on the grounds that the Americans with Disabilities Act does not apply to architects.  Section 302(a) of Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

---

[7] The public accommodations section of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who *owns, leases (or leases to), or operates* a place of public accommodation."  42 U.S.C. § 12182(a) (emphasis added).

of any place of public accommodation by any person who *owns, leases (or leases to), or operates* a place of public accommodation." 42 U.S.C. § 12182(a) (2006) (emphasis added). Discrimination "for purposes of section 302(a)" includes the "failure to design and construct facilities . . . that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements." *Id.* § 12183(a)(1).

Kuchmas contends that a majority of courts have held that Congress intended for architects to be liable under Title III of the ADA. (Pl.'s Mem. Opp'n PGAL's Mot. Dismiss 11-14.) This argument appears to be directly contravened by the clear language of the statute referring to one who "owns, leases . . . or operates" the building in question. 42 U.S.C. § 12182(a) (2006). Indeed, Plaintiff's reliance on this Court's opinion in *Baltimore Neighborhoods, Inc. v Rommel Builders, Inc.*, 3 F. Supp. 2d 661, 665 (D. Md. 1998), is misplaced. In that case, this Court held that "[w]hen a group of entities enters into the design and construction of a covered dwelling, all participants in the process as a whole are bound to follow the FHAA." *Id.* However, that case is distinguishable because it involved the Fair Housing Act, not the Americans with Disabilities Act. As noted above, the FHA and ADA are quite different. The FHA does not contain the express limitations, as does the ADA with respect to the liability of one who "owns, leases . . . or operates" the building in question. Thus, this Court's previous ruling as to the FHA cannot be extended to the present case.

In *Johanson v Huizenga Holdings, Inc.*, 963 F. Supp. 1175, 1178 (S.D. Fla. 1997), and *United States v. Ellerbe Becket, Inc.*, 976 F. Supp. 1262, 1267 (D. Minn. 1997), two cases cited by the Plaintiff, the courts held that restricting liability in section 303(a) to those persons mentioned in section 302(a) would create a gap in liability as to commercial buildings. Their

reasoning arose from the juxtaposition of sections 302(a) and 303(a)(1).  Section 302(a) imposes liability on a person who "owns, leases (or leases to), or operates a *place of public accommodation*" whereas section 303 applies to both "public accommodations *and* commercial facilities."  42 U.S.C. §§ 12182(a), 12183(a) (emphasis added).  Arguably, if Congress intended for section 303(a)(1) to be limited by section 302(a), then the inclusion of the words "commercial facilities" would be meaningless, as the only parties that can be liable under section 302(a) own, lease, or operate a place of public accommodation.

In support of its argument that it is not liable, PGAL relies on *Paralyzed Veterans of America v. Ellerbe Becket Architects & Engineers, P.C.*, 945 F. Supp. 1, 2 (D.D.C. 1996), in which the U.S. District Court for the District of Columbia held that "the plain language of the statute makes clear that architects are not covered by §§ 302 and 303 of the ADA."  The court offered two textual explanations for its conclusion.  First, it explained that the phrase "failure to design *and* construct" is conjunctive, indicating Congress's intent to impose liability only on those individuals or entities that *both* designed and constructed the noncompliant structure.  *Id.*  The court reasoned that entities responsible for both phases of creating a building would ensure that the experts they hire—construction companies and architects—"will hew to the dictates of the statute and regulations."  *Id.*  The court's second text-based rationale was that because section 303 merely defines certain types of "discrimination for purposes of section 302(a)," 42 U.S.C. § 12183(a), the express limitation on liability in section 302 to a "person who owns, leases (or leases to), or operates a place of public accommodation," 42 U.S.C. § 12182(a), applies to the "design and construct" provision.  *Paralyzed Veterans of Am.,* 945 F. Supp. at 2.

A review of the text of the statute compels the conclusion that Congress merely intended

13

to require handicap accessibility at a greater number of newly constructed *facilities*, not to expand the scope of *who* can be liable for noncompliant structures. *See Lonberg v. Sanborn Theaters, Inc.*, No. 99-56221, 2001 U.S. App. LEXIS 21065, at *17 (9th Cir. 2001) ("It is quite logical that Congress wanted the 'general rule' in § 12182(a), which refers only to public accommodations, to be 'applied' in the same way to commercial facilities for the purposes of 'design and construct' discrimination. . . . This is significant because, after the noncompliant building has already been built, which is the case here, injunctive relief is only meaningful against the person currently in control of the building."). When explaining section 303 of the legislation, the House of Representative's Committee on Education and Labor noted that "[t]he intent of this title is to extend this [accessibility] obligation to all ewly [sic] constructed commercial establishments. . . . The Act also includes . . . the phrase 'commercial facilities' to ensure that *all* newly constructed commercial facilities will be constructed in an accessible manner." H. Rep. No. 101-485(II), at 116 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 399. In addition, the Committee on Energy and Commerce noted that "[t]he inclusion in this title of provisions applicable to commercial facilities is not intended to subject such facilities to the requirements of section 302 applicable to public accommodations. . . ." H. Rep. No. 101-485(IV), at 60 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 512, 549. Thus, section 303 was written as a separate section to ensure that *all* newly constructed buildings were accessible without imposing the restrictions in section 302 on existing commercial buildings. This Court cannot find any support in the legislative history for the Plaintiff's position that Congress intended for section 303 to subject a greater number of entities or individuals to liability.

Based on the text of sections 302 and 303 of the ADA and the legislative history behind those provisions, this Court holds that the ADA does not impose liability on architects for failing

to "design and construct" buildings to be accessible to persons with disabilities. Accordingly, Plaintiff has failed to state a claim against PGAL as to its ADA claim, and PGAL's Motion to Dismiss is GRANTED with respect to Count III.

## II.     Towson University's Partial Motion to Dismiss

Towson University seeks dismissal of Counts I and II on the grounds that it is immune under the Eleventh Amendment of the United States Constitution.[8] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court of the United States has extended this immunity to suits against a state by its own citizens. *See, e.g., Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). However, "Congress may abrogate the States' constitutionally secured immunity from suit in federal court . . . by making its intention unmistakably clear in the language of [a] statute." *Kimel*, 528 U.S. at 73 (citation omitted). Congress's intent must be "unequivocal" in order to subject states to private lawsuits in federal court. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

In this case, Towson University contends that it is entitled to immunity, because "[t]here is no language whatsoever in the text of the Fair Housing Act that expresses a congressional intent to abrogate Eleventh Amendment immunity." (Towson's Mem. Supp. Part. Mot. Dismiss 4.) Section 3604 of the Fair Housing Act ("FHA"), which prohibits various discriminatory

---

[8] It is undisputed that Towson University is a branch of the Maryland state university system and therefore eligible for Eleventh Amendment protection. *See* Md. Code Ann., Educ. § 12-101 (LexisNexis 2005).

15

housing practices, makes no mention of who or what can be liable for engaging in those unlawful practices. 42 U.S.C. § 3604 (2006). Section 3613 allows an "aggrieved person" to bring a civil action in state or federal court to seek injunctive or monetary relief, but does not specify who can be sued in such an action. *Id.* § 3613. However, in the provision on attorney's fees and costs, section 3613 notes that "[t]he United States shall be liable for such fees and costs to the same extent as a private person." *Id.* § 3613(c)(2). A simple reading of this language would suggest that only the federal government and private persons[9] can be liable as defendants in a civil action under the FHA.[10] Thus, the text of the FHA lacks any clear statements of Congress's intent to abrogate states' immunity under the Eleventh Amendment.[11]

In response to Towson University's Partial Motion to Dismiss, Plaintiff simply states that "[t]his issue . . . has not been squarely decided by either the Supreme Court or the Fourth Circuit,

---

[9] A "person" is defined as "one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11 of the United States Code, receivers, and fiduciaries." 42 U.S.C. § 3602(d) (2006).

[10] In the section of the FHA authorizing administrative proceedings brought by the United States Department of Housing and Urban Development, the term "person" is also used in reference to respondents. 42 U.S.C. § 3610(a)(1)(D) (2006) ("[a] person who is not named as a respondent in a complaint, but who is identified as a respondent in the course of investigation, may be joined as an additional or substitute respondent. . . .").

[11] In contrast, the Americans with Disabilities Act contains a clear statement that Congress intended to eliminate states' immunity: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act." 42 U.S.C. § 12202 (2006). *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (finding that the ADA contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity"). Likewise, Congress clearly intended for states to be liable under the Rehabilitation Act: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973. . . ." *Id.* § 2000d-7. Thus, it is undisputed that Towson University would not have Eleventh Amendment immunity from the ADA and Rehabilitation Act claims set forth in Counts IV and V of the Complaint.

and thus remains an open issue." (Pl.'s Opp'n Towson's Part. Mot. Dismiss 1.) It is true that neither the Supreme Court nor the United States Court of Appeals for the Fourth Circuit has ruled on this precise issue. However, Judge William Nickerson of this Court has previously noted without discussion that "Eleventh Amendment immunity precludes the award of damages against [state] Defendants" under the FHA. *Project Life, Inc. v. Glendening*, 139 F. Supp. 2d 703, 711 (D. Md. 2001), *aff'd*, 46 Fed. Appx. 147 (4th Cir. 2002). In addition, courts in other jurisdictions have held that the FHA lacks "unequivocal" language of a congressional intent to abrogate states' immunity. *See, e.g., Gregory v. S. C. Dep't of Transp.*, 289 F. Supp. 2d 721, 724-25 (D.S.C. 2003), *aff'd*, 114 Fed. Appx. 87 (4th Cir. 2004). *See also Morris v. Dehaan*, 1991 U.S. App. LEXIS 22135 (6th Cir. 1991) ("[N]othing in the Fair Housing Act . . . can be construed as a congressional abrogation of Michigan's Eleventh Amendment immunity."); *Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal*, Nos. CV-04-3886, CV-04-3887, CV-04-3888, 2005 U.S. Dist. LEXIS 43028, at *7 (E.D.N.Y. 2005); *Welch v. Century 21 Chimes Real Estate, Inc*., No. CV-90-3410, 1991 U.S. Dist. LEXIS 2411, at *3 (E.D.N.Y. 1991).

In light of the absence of clear congressional intent in the text of the FHA to abrogate states' immunity and the Supreme Court's admonishment that courts not "run[] afoul of the unequivocal-expression requirement," *United States v. Nordic Village*, 503 U.S. 30, 38 (1992), this Court holds that the Eleventh Amendment bars private suits against Towson University under the Fair Housing Act. Accordingly, Defendant Towson University's Partial Motion to Dismiss with respect to Counts I and II is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant PGAL Architects, Inc.'s Motion to Dismiss is GRANTED, and Towson University's Partial Motion to Dismiss Counts I and II is GRANTED.

/s/
Richard D. Bennett
United States District Judge

Date: September 11, 2007